IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------x

**KINGS CHOICE NECKWEAR, INC.,**

**07 CV 275 (DMC)**

**On Behalf of Itself and All Others Similarly
Situated,**

Plaintiff,

v.

**FEDEX CORPORATION, FEDEX
CUSTOMER INFORMATION SERVICES,
INC., FEDEX CORPORATE SERVICES,
INC., AMALGAMATED FINANCIAL
GROUP, and LAW OFFICES OF
WEINSTOCK & O'MALLEY**

Defendants.

------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AMALGAMATED'S MOTION TO DISMISS

SANFORD WITTELS & HEISLER, LLP
440 West Street
Fort Lee, New Jersey 07024
(201) 585-5288

950 3rd Ave., 10th Floor
New York, NY 10022
(646) 723-2947

1666 Connecticut Ave., N.W., Suite 300
Washington, D.C. 20009
(202) 742-7777

Attorneys for Plaintiff and Class

Dated October 31, 2007

# **TABLE OF CONTENTS**

| Section | Page |
|---|---|
| Table of Authorities | iii |
| PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT | 1 |
| Factual Background | 6 |
| The Allegations of Plaintiff's First Amended Complaint | 6 |
| Kings Choice Neckwear, Inc. | 6 |
| Amalgamated Financial Group | 6 |
| FedEx's Collection Fee Provision | 6 |
| Defendants Impose a 40 Percent "Collection Fee" on Plaintiff Kings Choice | 7 |
| Plaintiff Pays the Collection Fee under Duress and Under Protest | 7 |
| Plaintiff's Class Action Allegations | 7 |
| THE COMPLAINT'S CAUSES OF ACTION | 8 |
| The Complaint's Causes of Action against Defendant Amalgamated | 8 |
| ARGUMENT | 10 |
| POINT 1 – PLAINTIFF'S SECOND CAUSE OF ACTION STATES A VALID CLAIM THAT AMALGAMATED AIDED AND ABETTED (OR CONSPIRED WITH) FEDEX TO IMPOSE A CONTRACTUALLY IMPERMISSABLE COLLECTION FEE PENALTY ON SHIPING CUSTOMERS OF FEDEX. THE INTRACORPORATE CONSPIRACY IMMUNITY DOCTRINE DOES NOT UNDERMINE PLAINTIFF'S SECOND COUNT. AT A MINIMUM, THERE ARE FACTUAL ISSUES PRESENT REGARDING AMALGAMATED'S STATUS AS A NON-AGENT INDEPENDENT CONTRACTOR, AND THESE ISSUES MAKE A RULE 12(B)(6) DISMISSAL INAPPROPRIATE | 10 |
| (A.) The Legal Standard on Amalgamated's Motion to Dismiss | 10 |
| 1. New Jersey Recognizes Civil Conspiracy and Aiding and Abetting as Valid Causes of Action | 11 |
| 2. The Intra-corporate Conspiracy Exception is Inapplicable and Does Not Defeat the Complaint's Second Claim | 12 |

POINT II – THE NEW JERSEY CONSUMER FRAUD ACT IS A FLEXIBLE     17
REMEDIAL STATUTE WHICH PROVIDES RELIEF FOR ANY VIOLATION
OF GOOD FAITH, HONESTY IN FACT, AND OBSERVANCE OF FAIR
DEALING. CONSEQUENTLY, PLAINTIFF'S CONSUMER FRAUD CLAIM
AGAINST AMALGAMATED (COUNT 3) SHOULD BE SUSTAINED
BECAUSE THE NEW JERSEY CONSUMER FRAUD ACT PROTECTS
BUSINESS ENTITIES AND GOVERNS BUSINESS TRANSACTIONS

POINT III – THE COMPLAINT'S FIFTH CLAIM PLEADS A GOOD CAUSE     23
OF ACTION FOR UNJUST ENRICHMENT BECAUSE A PARTY MAY
RECOVER AS RESTITUTIONARY DAMAGES THAT PART OF THE LATE
FEE WHICH IS EXCESSIVE AND EXCEEDS REASONABLE DAMAGES

POINT IV – AMALGAMATED'S MOTION TO DISMISS THE CLASS     26
ALLEGATIONS SHOULD BE DENIED

CONCLUSION     27

## TABLE OF AUTHORITIES

### Federal Cases

AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421 (3rd Cir. 1994).......... 4, 14, 15, 16

Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985) ..........................................................3, 14

Condus v. Howard Sav. Bank, 986 F. Supp. 914, 916 (D.N.J. 1997)...........................................16

Garcia v. Canan, 851 F. Supp. 327, 328 (N.D. Ill. 1994) .....................................................23, 24

H&B Equip Co., Inc., v. International Harvester Co., 577 F. 2d, 239, 244 (5th Cir. 1978).....4, 14

Knorr Brake Corp. v. Harbil, Inc., 738 F. 2d 223, 230 (7th Cir. 1984) .......................................13

Kona v. Pac Group, 680 F. Supp. 1438 (D.Haw. 1988)..............................................................24

Courtney v. Pacific Adventures (In re Pacific Adventures), 5 F.Supp. 2d 874, 881 (D.
    Hawaii 1998)........................................................................................................................17

Miller v. ICK, 358 F. Supp. 1378, 1379 (N.D. Ill. 1972) ...........................................................13

Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 415, n.
    3 (3d Cir. 2003)....................................................................................................................12

Taylor v. Sandiford, 20 U.S. 13, 15 (1822, Marshall, J.)............................................................24

United States v. President & Fellows of Harvard College, 323 F. Supp. 2d 151, 169 (D.
    Mass. 2004)..........................................................................................................................15

### State Cases

Abel Construction Co. v. Seward, 188 Neb. 166 (1972) ..............................................................25

AFLAC, Inc. v. Williams, 265 Ga. 351, 354, (1994) ..................................................................25

Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 512, fn. 4 (1994) .......3, 13

Bahrle v. Exxon Corp., 145 N.J. 144, 157 (N.J. 1996)...............................................................14

Baldasarre v. Butler, 625 A.2d 458, 465 (N.J. 1993) .................................................................14

Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (N.J. 2005) .................................................11

Benya v. Gamble, 321 S.E. 2nd 57 (Court App. S.C. 1984)........................................................24

Black v. Bank of America, N.T. & S.A., 30 Cal. App. 4th 1, 9 (Court of App. Cal. 1994) .....3, 13

Board of Education v. Hoek, 38 N.J. 213, 238 (N.J. 1962) .........................................................12

Bonanno v. LaSalle and Bureau Country R. Co., 87 Ill. App. 3d 988, 995, 409 N.E.2d
    481, 486, 42 Ill. Dec. 866 (1980)..........................................................................................13

Brady v. Ralph Parsons Co., 308 Md. 486, 520 A.2d 717, 731 (Md. 1987)................................15

Brenner v. Little Red Schoolhouse, Ltd., 302 N.C. 207, 214 (1981) ...........................................24

Camelot Music, Inc. v. Mars Realty and Improve. Co., 514 So. 2nd 987 (Sup. Court
    Alabama 1987)......................................................................................................................25

Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J. Super. 171 (App. Div. 1994)....................20

Colby v. Bailey, 5 Haw. 152, 153 (1884) ...................................................................................24

Council v. Hogan, 566 A. 2nd 1070, 1072 (D.C. Court of App. 1989)........................................24

Cox v. Sears, Roebuck and Co., 647 A.2d 454, 460, 462 (N.J. 1994).........................................18

Dahlgren Ltd. v. Board of Supervisors, 240 Va. 200, 201 (Sup. Court. Va. 1990)......................25

Drier Company v. Unitronix Corporation, 218 N.J. Super. 260 (App. Div. 1986) ................20, 21

Fischer v. Schmeling, 520 N.W. 2nd 820, 822 (Sup. Court N.D. 1994) ......................................25

Frank v. Jansen, 303 Minn. 86, 90-91, (1975)...........................................................................24

Garrett v. Coast and Southern Federal Savings and Loan Association, 9 Cal. 3rd 731
(Supr. Court Cal. 1973) ....................................................................................................24
Gary Outdoor Advertising Co. v. Sun Lodge Inc., 133 Az. 240, 243 (1982) .............................24
Gennari v. Wechert Co., Realtors, 148 N.J. 582, 604 (1997).....................................................18
Gershin v. Sherman, 685 N.E. 2nd 1125...................................................................................25
Graves v. Cupic, 75 Idaho 451 (1954)......................................................................................25
Harmon v. Eggers, 699 S.W. 2nd 159 163 (Tenn. 1985)...........................................................25
Highgate Association Ltd. V. Merryfield, 157 Vt. 313, 597 A.2d 1280, 1282 (Vt. 1991).....23, 24
Hundred East Credit Corporation v. Eric Schuster Corporation, 212 N.J. Super. 350, 354-
357 (App. Div. 1986) .............................................................................................. 5, 19, 20
Illingwroth v. Bushong, 297 Or. 675 (1984)..............................................................................25
Jessen v. Jessen, 871 P. 2nd 987 (Sup. Court Wyo. 1991) ........................................................25
Kalenka v. Taylor, 896 P. 2nd 222, 229 (Sup. Court Alaska 1995) ...........................................24
Kavky v. Herbalife International of America, 359 N.J. Super. 497, 501 (App. Div. 2003)5, 18, 21
Koenig v. Schlitz Breweries, 126 Wis. 349, 368.......................................................................24
Kugler v. Romain, 58 N.J. 522, 543 (1971) ..............................................................................19
Kushan v. Strong, 39 N.M. 281 (1935).....................................................................................25
Kutzin v. Pirnie, 124 N.J. 500, 512 (1991) .........................................................................6, 8, 25
Lake Ridge Academy v. Carney, 613 N.E. 2nd 183, 188 (Sup. Court Ohio 1993)......................25
Lane v. Pfeifer, 568 S.W. 2nd 212 (Sup. Court Ark. 1978)........................................................25
Lemelledo v. Beneficial Management Corp. of America, 150 N.J. 255, 263-264 (1997)............18
Leon v. Rite Aid Corporation, 340 N.J. Super. 462, 467 (App. Div. 2001) ................................18
Lombardo v. Deshote, 647 So. 2nd 1086...................................................................................25
Loomis v. Lange Fin. Corp., 109 Nev. 1121 (1993)...................................................................25
Man O War Restaurants, Inc. v. John Martin, 932 S.W. 2nd 366, 369 (Sup. Court Ky.
1996).....................................................................................................................................24
Marascio v. Campanella, 298 N.J. Super. 491, 498 (App. Div. 1997) .............................. 5, 18, 20
Massey v. Love, 478 P. 2nd 948 (Sup. Court Ok. 1979) ............................................................25
Mavrikidis v. Petullo, 153 N.J. 117, 132 (N.J. 1998) ................................................................15
Maxey v. Glindmeyer, 379 So. 2d 297, 301 (Sup. Court. Miss. 1980) .......................................25
Monmouth Park Association v. The Wallis Ironworks, 53 N.J.L. 132.........................................22
Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364-365 (App.
Div. 1993)............................................................................................................................12
Muhammad v. N.J. Transit, 176 N.J. 185, 195-198 (N.J. 2003) ................................................14
New Mea Construction Corporation v. Harper, 203 N.J. Super. 486, 500 (App. Div.
1985)............................................................................................................................. 18, 21
Nohe v. Roblyn Development Corp., 296 N.J. Super. 172, 175 (App. Div. 1997) ................25, 26
Norman v. Durham, 380 S.W. 2nd 296, 304 (Sup. Court. N.C. 1964)........................................24
O'Neal v. Home Town Bank, 237 Ga. App. 325, 334 (Court of App. Ga. 1999) ........................13
Pacheo v. Scoblinko, 532 A. 2nd 1036, 1038, 1039 (Sup. Jud. Court Me. 1987)........................24
People ex rel. Fahner v. Carriage Way West, Inc., 88 Ill. 2d 300, 430 N.E.2d 1005, 58 Ill.
Dec. 754 (1981) ...................................................................................................................13
Phillips v. Phillips, 820 S.W. 2nd 785 (Sup. Court Tx. 1991) ...................................................25
Rohauer v. Little, 736 P. 2nd 403, 410 (Sup. Court Col. 1987)..................................................24
Rohlin Construction Co. v. Hintoy, 476 S.W. 2nd 78 (Sup. Court Iowa 1991)...........................25
Shallow Brook Associates v. Dube, 135 N.H. 40 48-48 (Sup. Court N.H. 1991).......................24

Skeer v. EMK Motors, Inc., 187 N.J. Super. 465 ........................................................................ 21
State v. Coleman, 80 N.J.L. 15, 20 (Sup. Ct. N.J. 1910) ............................................................. 13
State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications
    Intern., Inc., 387 N.J. Super. 469, 481 (App. Div. 2006) .......................................................... 12
Story v. City of Bozeman, 259 Mont. 207, 227 (1993) ............................................................... 25
United Gas Pipe Line Co., v. Mississippi Public Service Commission, 241 Miss. 762, 776
    (1961) .................................................................................................................................... 13
United States School District 315 v. DeWerff, 6 Kan. App. 2nd 77, 81 (Court of App.
    Kan. 1981) ............................................................................................................................. 24
Van Es v. Honeyleaf Properties, Inc., 253 N.J. Super. 566, 568 (App. Div. 1992) ..................... 25
Walter Implement, Inc., v. Focht, 107 Wash. 553 (Sup. Court Wash. 1987) ............................... 25
Wasserman's Inc. v. Township of Middletown, 137 N.J. 238 (1994) .......................................... 22
Weber v. Broady, 255 Mo. 195, 200 (1992) ............................................................................... 25
Westmount Country Club v. Kameny, 82 N.J. Super. 200, 206 (App. Div. N.J. 1964) ............... 22
Whelling Clinic v. Van Pelt, 192 W. Va. 620, 624, N.12 ............................................................. 24
Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 264 (N.J. 1953) ............................... 14
Woodhaven Apartments v. Washington, 942 P. 2nd 918 (Sup. Court Utah 1997) ..................... 25
Worley v. McCarty, 354 Mich. 599 (1958) .................................................................................. 25
Zito v. Glaude, 122 R.I. 886 (Sup. Court R.I. 1979) ................................................................... 25

## State Statutes

N.J.S.A. § 56:8-1 .................................................................................................................. 14, 19
New Jersey Consumer Fraud Act (N.J. Stat. Ann Section 56:8-1 .............................................. 17

## Federal Rules

Fed. R. Civ. P. Rule 12(b)(6) ................................................................................................ passim

## Other Authorities

Lordsvale v. Bank of Zambia, 30 E.R. 165 (Queens' Bench 1996) ............................................ 25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------x

**KINGS CHOICE NECKWEAR, INC.,**

**07 CV 275 (DMC)**

**On Behalf of Itself and All Others Similarly
Situated,**

Plaintiff,

v.

**FEDEX CORPORATION, FEDEX
CUSTOMER INFORMATION SERVICES,
INC., FEDEX CORPORATE SERVICES, INC.,
AMALGAMATED FINANCIAL GROUP, and
LAW OFFICES OF WEINSTOCK &
O'MALLEY**

Defendants.

------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AMALGAMATED'S MOTION TO DISMISS[1]

### Preliminary Statement and Summary of Argument

The FedEx Corporation imposes an excessive forty percent (40%) "collection fee"
penalty on overdue sums owed by its shipping customers even though FedEx's U.S. Terms and
Conditions (the "Terms") stipulate that any collection fee must be "reasonable."

Defendant Amalgamated Financial Group ("Amalgamated"), (the moving party on the
Motion to Dismiss before this court), serves as FedEx's collection agency. Amalgamated aids
and abets FedEx's breach of contract and conspires with FedEx to effectuate such breach (First
Amended Complaint, ¶¶ 40-44, Second Cause of Action). In so doing, Amalgamated also

---

[1] While Co-Defendant Law Offices of Weinstock & O'Malley ("W & O") have joined Amalgamated's Motion to
Dismiss, Plaintiff will drop all claims against W & O without prejudice.

1

violates the New Jersey Consumer Fraud Act and unjustly enriches itself. (See First Amended Complaint Third Cause of Action at ¶¶ 45-51, and Fifth Cause of Action at ¶¶ 57-62)  Through its collection activities, Amalgamated reaps a substantial slice of the unjustified collection fee FedEx imposes on the class of FedEx customers, a class which includes Plaintiff Kings Choice Neckwear, Inc. ("Kings Choice").

Notwithstanding that this lawsuit is just out of the starting gate with discovery barely begun, Amalgamated moves for dismissal under Fed. R. Civ. P. Rule 12(b)(6).

Amalgamated's motion to dismiss must be denied because Plaintiff Kings Choice's first amended complaint alleges viable claims that:

1)  Amalgamated aided and abetted FedEx's breach of contract and conspired with FedEx to accomplish the breach by materially assisting FedEx to extract contractually impermissible and unreasonable collection fee penalties on customers' overdue accounts (First Amended Complaint, Second Cause of Action); and

2)  Amalgamated's deceptive and unconscionable conduct violated the New Jersey Consumer Fraud Act as well as the State's public policy, (Third Cause of Action), and unjustly enriched Amalgamated (Fifth Cause of Action).

Contrary to Amalgamated's assertions (Amalgamated Brief, pgs. 6-11), the intra-corporate conspiracy rule is inapplicable here and does not bar the Complaint's Second Cause of Action against Amalgamated for aiding and abetting (and/or conspiring with) FedEx to carry out a breach of contract.  There must be two persons or entities to form a conspiracy. Because a corporation is a legal fiction that cannot act except through its employee-agents, a corporation cannot conspire with itself or its employee-agents any more than a single private individual can conspire with himself.

2

Amalgamated argues that it is an employee-agent of FedEx and therefore cannot conspire with its principal, FedEx, to breach the FedEx Term's interdiction against unreasonable collection fees. On this basis, Amalgamated seeks dismissal of the Complaint's Second Claim, which alleges that Amalgamated conspired to breach a contract. Amalgamated is wrong; it is not an employee of FedEx but rather sits outside the corporate confines of FedEx and is an independent entity. As the title of the defense signifies, **"intra-corporate"** means "within" the corporation.[2] Here, however, where two different corporations conspire to breach a contract, the rule has no role to play.

As a separate player, Amalgamated may be held liable for conspiring with FedEx, and the intra-corporate conspiracy immunity does not attach to Amalgamated's actions in furthering and assisting FedEx's breach of contract. See Black v. Bank of America, N.T. & S.A., 30 Cal. App. 4th 1, 9 (Court of App. Cal. 1994); Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 512, fn. 4 (1994).

For are additional reasons, moreover, the intra-corporate conspiracy doctrine affords Amalgamated no succor. Amalgamated may not rely on the immunity principle because it acted at least in part for its own individual advantage and not solely on behalf of FedEx. Amalgamated reaped substantial sums for itself and FedEx in plundering the class and harvesting the collection fee penalty. Case law establishes that an agent may be held liable for conspiring with its corporate principal when the agent acts for his own individual advantage and not exclusively on behalf of the corporation. Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985); AT&T v.

---

[2] See, e.g., State v. Coleman, 80 N.J.L. 15, 20 (Sup. Ct. N.J. 1910) ("as we read the act, it is limited in its scope to the regulation of sales of liquor within the state … in other words, … intra-state …"); United Gas Pipe Line Co. v. Mississippi Public Service Commission, 241 Miss. 762, 776 (1961)("intra, as a prefix, means "within.").

Winback and Conserve Program, Inc., 42 F.3d 1421, 1436 (3rd Cir. 1994); H&B Equip Co., Inc., v. International Harvester Co., 577 F. 2d, 239, 244 (5th Cir. 1978).

At bar, there is an issue of fact whether Amalgamated acted for its own individual advantage and not solely on behalf of FedEx when it assisted FedEx to collect an extra-contractual collection fee penalty which flouts FedEx's shipping Terms. Only full scale discovery will reveal the nature of the relationship between Amalgamated and FedEx; the terms of Amalgamated's compensation; and penultimately whether Amalgamated served its own interests, a factor which would shred the shield of the intra-corporate conspiracy doctrine.

More fundamentally, Amalgamated labors under a bedrock misconception when it argues that, as a purported **agent** of FedEx, it cannot be held culpable for conspiring with or aiding and abetting its putative principal's breach of contract. But who (other than Amalgamated) says that Amalgamated actually is FedEx's agent? The law recognizes that an "independent contractor" who controls the methods of his own work is not deemed an agent of the person who hires him. See Restatement (Second) Agency § 14N, Comment (b):

> A person who contracts to accomplish anything for another . . . but who is not acting as a fiduciary for the other is a **non-agent contractor**.

See also AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1439 (3rd Cir. 1994) (recognizing that a party may be a non-agent, independent contractor). Whether Amalgamated is a non-agent independent contractor is an issue of fact. (Id. at 1436). In the suit at hand, a flurry of factual questions must first be answered before the court can resolve whether Amalgamated is an agent of FedEx or a non-agent independent contractor. That array of questions includes – (1) what kind of control did FedEx exercise over Amalgamated's collection

4

activities? (2) did Amalgamated take direction from FedEx? and (3) how often did Amalgamated report to FedEx on its methods and operations and other operational areas?

These points cannot be resolved on a motion to dismiss, and accordingly, Amalgamated's challenge to the Second Cause of Action sounding in conspiracy and/or aiding and abetting must be rebuffed.

*     *

Amalgamated attacks Plaintiff's Third Cause of Action under the New Jersey Consumer Fraud Act ("CFA"), contending that the CFA neither protects businesses like Kings Choice nor encompasses commercial transactions. Again, Amalgamated errs.

It is simply untrue that the New Jersey Consumer Fraud Act exempts commercial dealings from its protective wings. Precedent repeatedly drives home the message that the CFA governs the distribution of merchandise for use in business operations. The CFA is not restricted to the sale and advertising of merchandise for personal, family, or household use, but extends to business transactions and protects corporate and private consumers. See Hundred East Credit Corporation v. Eric Schuster Corporation, 212 N.J. Super. 350, 354-357 (App. Div. 1986); Marascio v. Campanella, 298 N.J. Super. 491, 498 (App. Div. 1997); Kavky v. Herbalife International of America, 359 N.J. Super. 497, 501 (App. Div. 2003). Consequently, a business entity or a corporation like Plaintiff Kings Choice can be a consumer within the meaning of the Act.

*     *

An additional prong of Amalgamated's motion seeks dismissal of Plaintiff Kings Choice's Fifth Cause of Action for unjust enrichment; but Amalgamated's arguments under this heading are without merit and should be rebuffed. Plaintiff's Fifth Cause of Action alleges that

5

Amalgamated has unjustly enriched itself by collecting part of a contractually impermissible collection fee penalty from the class of FedEx shipping customers. As the New Jersey Supreme Court ruled in Kutzin v. Pirnie, 124 N.J. 500, 516 (1991), "if a plaintiff can and does show by proper evidence that the defendant is holding an amount of money as a penalty rather than as compensation for injury, he should be given judgment for restitution of that amount." Id. at 512.

### Factual Background

**1)     The Allegations of Plaintiff's First Amended Complaint**

**(a)     Kings Choice Neckwear, Inc.**

Plaintiff Kings Choice Neckwear, Inc. is a regular customer of Defendant FedEx Corporation and uses FedEx shipping services to both send and receive packages from clients. Plaintiff receives bills directly from FedEx for these services and pays bills in a timely fashion. (First Amended Complaint ¶ 21).

**(b)     Amalgamated Financial Group**

Defendant Amalgamated Financial Group ("Amalgamated" or "AFG") is headquartered in Old Bridge, New Jersey, and transacts business in New Jersey. According to its website, Amalgamated is "the Nation's leading Bill to Bank management firm. AFG provides end-to-end services in Credit Risk, Billing, Customer Care, Dispute Resolution, Receivable Contact, Collections and Cash Application." (First Amended Complaint ¶¶ 17-18).

**(c)     FedEx's Collection Fee Provision**

6

Defendant FedEx's U.S. Terms and Conditions contain a provision describing the amount of "collection agency fees" that FedEx may charge customers to reimburse the company. The provision states pertinently:

> The shipper and any other party who is liable for payment are responsible for all **reasonable costs** incurred by FedEx in obtaining or attempting to obtain payment for services rendered by us. Such costs include, but are not limited to, attorney's fees, collection agency fees, interest, and court costs. (emphasis added) (Complaint ¶ 27)

**(d)    Defendants Impose a 40 Percent "Collection Fee" on Plaintiff Kings Choice**

On or about June 19, 2006, plaintiff Kings Choice received correspondence from defendant Amalgamated claiming that Plaintiff owed $140 to FedEx for previously shipped delivery to Kings Choice. (¶ 22) The $140 payment that Amalgamated demanded included $100 as an overdue amount on a supposedly unpaid shipment and $40 as a Collection Fee. (Id. at ¶ 25)

**(e)    Plaintiff Pays the Collection Fee under Duress and under Protest**

During August and September 2006, the law firm of Weinstock & O'Malley sent letters to plaintiff Kings Choice threatening that if Plaintiff did not pay the $140, defendants would proceed with full-scale litigation to secure the supposedly delinquent payment. Ominously, the letters referenced the caption: **FEDEX CUSTOMER INFO SVCS vs. KINGS' CHOICE NECKWEAR IN.** (Id. at ¶ 24)

Because of these ongoing threats of litigation and potential impairment of its credit, as well as the need to continue with uninterrupted FedEx services, on September 8, 2006, Kings Choice paid the $140 demanded. Kings Choice paid "under protest." (Id. at ¶ 26)

7

## Plaintiff's Class Action Allegations

Predicated on the foregoing facts, Plaintiff Kings Choice pleaded class action allegations on behalf of all FedEx shipping customers upon whom defendants assessed an unreasonably high and contractually banned collection fee penalty. (Id. ¶ 31-34.)

## THE COMPLAINT'S CAUSES OF ACTION

### The Complaint's Causes of Action against Defendant Amalgamated

In its Second Claim, Plaintiff Kings Choice charged Amalgamated with aiding and abetting FedEx's breach of contract by helping to recover an exorbitant collection fee penalty expressly proscribed by FedEx's terms and conditions. (¶¶ 41-44)

The Complaint's Third Cause of Action asserted a New Jersey Consumer Fraud Act count against Amalgamated; the Fourth Cause of Action accused all defendants, including Amalgamated, of engaging in an unlawful scheme with respect to plaintiff and the class to collect excessive and unreasonable collection fee penalties, in violation of public policy.

Lastly, the Complaint interposed a Fifth Cause for unjust enrichment as against all Defendants. The unjust enrichment count stated that because of the wrongful activities previously described, including Amalgamated's billing Plaintiff and the class for excessive collection fee penalties, all Defendants received money belonging to Plaintiff and the class which in justice and in good conscience Defendants should not be permitted to keep. (¶¶ 59-62)

### Procedural History and Discovery

On August 30, 2007, Defendant Amalgamated moved for summary judgment on virtually the identical grounds it raises on this motion to dismiss.

Following a conference before United States Magistrate Judge Mark Falk, Amalgamated withdrew its Motion for Summary Judgment and instead submitted the instant motion to dismiss

8

which is *sub judice* before this Court.  However, as the Court will note, Amalgamated's brief in support of dismissal hews virtually verbatim to its summary judgment submission and contains portions of the Rule 56.1 statement lifted unchanged from the Summary Judgment Motion.

*     *

### Discovery in This Action Has Just Begun

While FedEx and Amalgamated have provided limited document discovery, depositions have not yet taken place.  These are scheduled to begin in mid-November.  The depositions of designated employees of Defendants FedEx, Amalgamated, and Weinstock & O'Malley (Amalgamated's attorneys), are scheduled to take place as follows:

(a)   Noah Kehinde, Former Manager, Strategic Revenue Programs, FedEx – Wednesday, November 14, 2007, 9 a.m.

(b)   Kendell Black, Senior Manager, Revenue Recovery, FedEx – Wednesday, November 14, 2007, 2 p.m.

(c)   Steve O'Malley, Partner, Weinstock & O'Malley, P.A. – Thursday November 15, 2007, 9 a.m.

(d)   Ken Fulmore, EVP, Amalgamated – Thursday, November 15, 2007, 2 p.m.

(e)   Jacqueline Bryce, Director of Operations, Amalgamated – Friday, November 16, 2007, 9 a.m.

*     *

In the pages below, Plaintiff will demonstrate why Amalgamated's Motion to Dismiss on the pleadings must be denied.  The intra-corporate conspiracy immunity shield does not protect Amalgamated from the Complaint's Second Cause of Action alleging that Amalgamated conspired with and/or aided and abetted FedEx's breach of contract in charging an unreasonable and excessive collection fee penalty.  The immunity is inoperative here for three reasons.

First, Amalgamated is a separate corporate entity and not an employee servant of FedEx. There is no **intra**-corporate link between FedEx and Amalgamated; they are two separate corporations. Second, Amalgamated derives profits from its collection activities for FedEx, acts in its own interests, and consequently, under settled case law, the intra-corporate immunity is not triggered. Third, the intra-corporate immunity doctrine applies only to **agents** of the principal. At bar, there are issues of fact whether Amalgamated occupies the status of a *non-agent – independent contractor*, and whether this position nullifies the rule of intra-corporate immunity. Is Amalgamated a non-agent – independent contractor? This question can't be answered at this juncture because it hinges on a host of factual issues, including the degree of control FedEx exercises over Amalgamated's collection activities. Such matters are disqualified from adjudication on a Motion to Dismiss.

Amalgamated's postulate that the New Jersey Consumer Fraud Act does not cover commercial transactions or business plaintiffs like Kings Choice who are non-consumers has been refuted by decades of case law by the New Jersey courts. Finally, Plaintiff Kings Choice may recover on a claim of unjust enrichment that portion of the collection fee which represents unreasonable compensation and a penalty to FedEx and/or Amalgamated.

## ARGUMENT

### POINT I

**PLAINTIFF'S SECOND CAUSE OF ACTION STATES A VALID CLAIM THAT AMALGAMATED AIDED AND ABETTED (OR CONSPIRED WITH) FEDEX TO IMPOSE A CONTRACTUALLY IMPERMISSIBLE COLLECTION FEE PENALTY ON SHIPPING CUSTOMERS OF FEDEX. THE INTRACORPORATE CONSPIRACY IMMUNITY DOCTRINE DOES NOT UNDERMINE PLAINTIFF'S SECOND COUNT. AT A MINIMUM, THERE ARE FACTUAL ISSUES PRESENT REGARDING AMALGAMATED'S STATUS AS A NON-AGENT INDEPENDENT**

10

CONTRACTOR, AND THESE ISSUES MAKE A RULE 12(B)(6) DISMISSAL
INAPPROPRIATE.

## A. The Legal Standard on Amalgamated's Motion to Dismiss

Defendant Amalgamated labors under an extremely heavy burden in moving for a
12(b)(6) dismissal. When adjudicating a 12(b)(6) Motion to Dismiss, the Court must view the
allegations of the complaint most favorably to the Plaintiff. The Court may dismiss for failure to
state a claim only if it is certain that no relief could be granted under any factual scenario
consistent with the pleading's allegations. See, e.g., Serio v. Wachovia Secs., LLC, 2007 U.S.
Dist. LEXIS 63341 at **7-9 (D.N.J. 2007, Cavanaugh, J.); Johnson v. United States Postal
Servs., 2007 U.S. Dist. LEXIS 47313, 6-7 (D.N.J. 2007, Cavanaugh, J.). All reasonable
inferences arising from the facts provided must be accepted by the reviewing court. It is not the
mission of a Rule 12(b)(6) motion to adjudicate the facts of the litigation. Padilla v. Price
Toyota, 2006 U.S. Dist. LEXIS 45506 (D.N.J. 2006); Steiner v. MedQuist Inc., 2006 U.S. Dist.
LEXIS 71952, 23-24 (D.N.J. 2006). The overriding question before the court is not whether
Plaintiff will prevail, but whether the Plaintiff can offer facts that give rise to an entitlement of
relief. Padilla, 2006 U.S. Dist. LEXIS 45506.

### 1. New Jersey Recognizes Civil Conspiracy and Aiding and Abetting as Valid Causes of Action.

Defendant Amalgamated erroneously characterizes Plaintiff's Second Cause of Action as
a tortious interference claim when it is actually a claim of civil conspiracy and aiding and
abetting. The New Jersey Supreme Court has defined civil conspiracy as "a combination of two
or more persons acting in concert to commit an unlawful act, or to commit a lawful act by
unlawful means, the principal element of which is an agreement between the parties to inflict a

wrong against or injury upon another, and an overt act that results in damage." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (N.J. 2005). See, generally, Sisso v. Islamic Republic of Iran, 2007 U.S. Dist. LEXIS 48526 at **51-54 (D.D.C. July 5, 2007) (discussing New Jersey law on civil conspiracy).

For a civil conspiracy claim to succeed, there must be an underlying cause of action apart from the conspiracy itself. Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364-365 (App. Div. 1993); Board of Education v. Hoek, 38 N.J. 213, 238 (N.J. 1962). "To establish a conspiracy, it simply must be shown that there was 'a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.'" Morgan, 268 N.J. Super. at 365 (citing Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971)

Aiding and abetting is an equally well-founded cause of action. Aiding and abetting occurs where one party is aware of another party's breach of duty and helps or encourages that breach. State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Communications Intern., Inc., 387 N.J. Super. 469, 481 (App. Div. 2006) ("McCormac"). The plaintiff must show wrong-doing independent of aiding and abetting, knowledge of the injury on the part of the aider or abettor, and significant aid from the aider or abettor. McCormac, 387 N.J. Super. at 481. Shared intent is not a requisite for civil aiding and abetting in New Jersey. Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 415, n. 3 (3d Cir. 2003).

Plaintiff alleges that Defendant Amalgamated conspired with or aided and abetted Defendant FedEx to breach the latter's contract(s) with the Plaintiff and the Class by charging exorbitant collection fee penalties, thereby enriching both Amalgamated and FedEx. These allegations are impervious to the intra-corporate conspiracy defense.

**2. The Intra-corporate Conspiracy Exception is Inapplicable and Does Not Defeat the Complaint's Second Claim.**

*Reason No. 1: The Intra-corporate Conspiracy Exception Only Applies to Employee-Agents Within, i.e. "intra," a Single Corporation and Amalgamated is not an Employee of FedEx, it is a Separate Corporation.*

It is a basic principle in conspiracy law that a party cannot conspire with itself. Because a corporation can only act through its employees, Black v. Bank of America, 30 Cal. App. 4th 1, 6 (Cal. Ct. Appeals 1994), the corporation cannot enter into conspiracy with its employees. Id.; Applied Equip. Corp. v. Litton Saudi Arabia, 7 Cal. 4th 503, 512, n. 4 (Cal. 1994). Amalgamated attempts to analogize itself to an employee of FedEx and asserts that for this reason, it cannot conspire with FedEx to breach FedEx's terms against an unreasonably high collection fee.

Defendant Amalgamated is mistaken. It is not an employee of FedEx and therefore its actions do not count as those of FedEx. What confronts us here is not an "intra-corporate" conspiracy between a corporation and its employee, but instead an **"inter**-corporate" conspiracy between two distinct corporate entities: FedEx and Amalgamated.

The distinction was well-summarized in Knorr Brake Corp. v. Harbil, Inc., 738 F. 2d 223, 230 (7th Cir. 1984):

> [A] civil conspiracy cannot exist among a corporation and its employees. See Bonanno v. LaSalle and Bureau Country R. Co., 87 Ill. App. 3d 988, 995, 409 N.E.2d 481, 486, 42 Ill. Dec. 866 (1980). **A civil conspiracy can exist among corporations.** See People ex rel. Fahner v. Carriage Way West, Inc., 88 Ill. 2d 300, 430 N.E.2d 1005, 58 Ill. Dec. 754 (1981).

13

The above holding is compelled by the very nomenclature of the "intra-corporate" conspiracy defense. "'Intra' as a prefix, means 'within'" United Gas Pipe Line Co., v. Mississippi Public Service Commission, 241 Miss. 762, 776 (1961). See, further, O'Neal v. Home Town Bank, 237 Ga. App. 325, 334 (Court of App. Ga. 1999) ("intra-corporate means … the officers or employees"); Miller v. ICK, 358 F. Supp. 1378, 1379 (N.D. Ill. 1972) ("the term 'exempt intra-city operations' means a vehicle used wholly within a municipality…"); State v. Coleman, 80 N.J.L. 15, 20-21 (Sup. Ct. N.J. 1910) ("as we read the act, it is limited in its scope to the regulation of sales of liquor **within the state** … in other words, … **intra-state** …"); See, as confirmation, Merriam-Webster Online Dictionary, "intra" means "within."

*Reason No. 2: The Intra-corporate Conspiracy Exception Does Not Apply to Those Acting on Their Own Behalf*

The intra-corporate conspiracy rule does not apply when agents who act in their own self-interest instead of solely on behalf of the corporation. Black, Cal. App. 4th at 6, n. 3.

Defendant Amalgamated clearly acted for its own individual advantage in collecting the improper fee because the company profited by doing so. Buschi v. Kirven, 775 F.2d 1240, 1252 (4th Cir. 1985); American Telephone & Telegraphic Company v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1436 (3rd Cir. 1994); H&B Equip Co., Inc., v. International Harvester Co., 577 F.2d 239, 244 (5th Cir. 1978).

*Reason No. 3: Amalgamated is Independently Liable Because There are Issues of Fact as to Whether it is a Non-Agent Independent Contractor*

Even under Amalgamated's position, intra-corporate immunity protects only **agents** of a corporate principal. Here, there are unresolved issues as to whether Amalgamated is FedEx's agent. Amalgamated is an independent contractor of FedEx, not a servant, and therefore can be held separately liable. An independent contractor is an entity that is contracted to do some work

14

and which retains control over the means by which the work is carried out. See, e.g., Bahrle v. Exxon Corp., 145 N.J. 144, 157 (N.J. 1996); Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 264 (N.J. 1953); Muhammad v. N.J. Transit, 176 N.J. 185, 195-198 (N.J. 2003); Baldasarre v. Butler, 625 A.2d 458, 465 (N.J. 1993); AT&T v. Winback & Conserve Program, 42 F.3d 1421, 1435 (3d Cir. 1994) (stating "If, however, the agent is not subject to that degree of physical control, but is only subject to the general control and direction by the principal, the agent is termed an independent contractor."); United States v. President & Fellows of Harvard College, 323 F. Supp. 2d 151, 169 (D. Mass. 2004). That lack of control by the principal over the agency is what makes the agent independently liable for its actions. AT&T, 42 F.3d at 1436.

Thus, the key difference between a servant and an independent contractor is the extent of the principal's control over the agent's work. Factors used to determine whether the control is minimal enough to qualify as an independent contractor relationship include whether the agent worked for other companies at the same time, whether the agent is paid by time or by job, whether the agent operates its own independent enterprise, whether the principal has a right of physical control, whether the principal supplied the tools and work location, whether the work is part of the regular course of business of the principal, etc. AT&T, 42 F.3d at 1436-37; Mavrikidis v. Petullo, 153 N.J. 117, 132 (N.J. 1998); President & Fellows, 323 F. Supp. 2d at 169. The right to require certain results is not enough to create a master-servant agency relationship. AT&T, 42 F.3d at 1435. A limited amount of control over the agency by the principal does not create the master-servant relationship either; a principal cannot "transform an independent contractor into a servant merely because he wishes to supervise the project as it transpires." Id. at 1436 (quoting Brady v. Ralph Parsons Co., 308 Md. 486 (Md. 1987)).

15

Furthermore, an independent contractor is not necessarily an agent. AT&T, 42 F.3d at 1436. A **non-agent independent contractor** is defined as "A person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other is a non-agent contractor." Id. at 1439. The distinction between a non-agent independent contractor and an agent independent contractor has been analogized as "a firm that contracts to perform a particular, discrete task, such as to build a swimming pool, or to a party who is empowered to speak for another and bind the other in contracts." Id.; Condus v. Howard Sav. Bank, 986 F. Supp. 914, 916 (D.N.J. 1997).

Amalgamated is not a servant of FedEx. Amalgamated is an independent entity that works for other clients in addition to FedEx. FedEx pays Amalgamated by the job and does not pay for any of the day-to-day costs of Amalgamated's business because Amalgamated is an independent enterprise. Amalgamated's work does not comprise the regular course of business for FedEx; collection services are convenient but are not necessary to providing shipping services. Finally, FedEx exercises only minimal control over Amalgamated, and that control relates directly to the results sought, not the means employed to achieve the results. These facts indicate that Amalgamated is not a servant of FedEx and, consequently, is liable for its own actions.

Additionally, Amalgamated may not even be an agent of FedEx. Amalgamated, unlike an agent independent contractor, is not empowered to speak for FedEx or enter FedEx into binding contracts. Rather, Amalgamated is more like a non-agent independent contractor because it has only been contracted by FedEx to complete very particular and discrete tasks.

16

Case law confirms the dual propositions that (1) an independent contractor often will **not** be an agent of the hiring party; and (2) whether the contractor qualifies as a non-agent is a fact-sensitive question unsuitable for resolution under Rule 12(b)(6). See Condus v. Gutman, 986 F. Sup. 914, 916 (D. N.J. 1997) (court determined that Speer & Associates was a non-agent independent contractor of defendant Savings Bank, and thus Speer's statements could not be attributed to the bank as an admission); AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1439 (3rd Cir. 1994) (case remanded to trial court because issue of fact existed regarding status of sales representatives as non-agent independent contractors.); Courtney v. Pacific Adventures (In re Pacific Adventures, Inc.), 5 F.Supp.2d 874, 881 (D. Hawaii 1998) (court denied summary judgment, finding genuine issues of material fact as to whether defendant was a non-agent independent contractor).

## POINT II

**THE NEW JERSEY CONSUMER FRAUD ACT IS A FLEXIBLE REMEDIAL STATUTE WHICH PROVIDES RELIEF FOR ANY VIOLATION OF GOOD FAITH, HONESTY IN FACT, AND OBSERVANCE OF FAIR DEALING. CONSEQUENTLY, PLAINTIFF'S CONSUMER FRAUD CLAIM AGAINST AMALGAMATED (COUNT 3) SHOULD BE SUSTAINED BECAUSE THE NEW JERSEY CONSUMER FRAUD ACT PROTECTS BUSINESS ENTITIES AND GOVERNS BUSINESS TRANSACTIONS.**

Defendant Amalgamated notes that the transaction between King's Choice and FedEx involved wholesale goods and argues that that the New Jersey Consumer Fraud Act ("NJCFA") does not apply and Plaintiffs' Third Count should be dismissed. However, the Defendants' emphasis on the nature of the shipped goods is misplaced. The transaction involved here was not a purchase of wholesale goods for resale. The transaction giving rise to the claim under the NJCFA is the service transaction between the Plaintiff and Defendant FedEx. The nature of the

17

goods shipped is irrelevant because it is the service that FedEx provided that led to the consumer fraud claim.

The relevant portion of the New Jersey Consumer Fraud Act (N.J. Stat. Ann Section 56:8-1) reads as follows:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely on such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise is declared to be an unlawful practice.

In Lemelledo v. Beneficial Management Corp. of America, supra,150 N.J. 255, 263-264 (1997) the New Jersey Supreme Court explained:

The CFA is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate....The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose mainly, to root out consumer fraud....Accordingly, our courts have invoked the Act to cover a wide variety of practices.

See also New Mea Construction Corporation v. Harper, 203 N.J. Super. 486, 500 (App. Div. 1985) where the Appellate Division stressed:

Our Supreme Court has observed broadly that the Act...is aimed basically at unlawful sales and advertising practices designed to induce customers to purchase merchandise or real estate....we have declared that the Consumer Fraud Act should be construed liberally in favor of protecting consumers....We deem it our responsibility to construe the act broadly not in a crabbed fashion,....**Statutory exceptions are not to be implied.**

See also Kavky v. Herbalife International of America, 359 N.J. Super. 497, 504 (App. Div. 2003) ("The Act is remedial and therefore its provisions are to be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes....Moreover, ... the history of the Consumer Fraud Act is one of constant expansion of consumer protections," quoting Gennari v. Wechert Co., Realtors, 148 N.J. 582, 604 (1997)). See further Leon v. Rite Aid Corporation, 340 N.J. Super. 462, 467 (App. Div. 2001) ("It has been said that the history of

18

the act is one of constant expansion of consumer protection"); Maracio v. Campanella, 298 N.J.

Super. 491, 498 (App. Div. 1997) ("In enacting the Act, the legislature intended a broad and

liberal reading of the statute . . . to provide strict rules protecting consumers.").

In Cox v. Sears, Roebuck and Co., 647 A.2d 454, 460, 462 (N.J. 1994), the

Supreme Court defined the parameters of the Act and highlighted that conduct showing lack of

good faith, honesty in fact and observance of fair dealing, may violate the Act.[3] The Consumer

Fraud Act specifically refers to any "unconscionable commercial practice." In Cox, the Supreme

Court held that "the standard of conduct the term 'unconscionable' implies is lack of good faith,

honesty in fact, and observance of fair dealing." The "unconscionability" mentioned in the CFA,

"is . . . obviously designed to establish a broad business ethic." Kugler v. Romain, 58 N.J. 522,

543 (1971).

It is simply untrue that the New Jersey Consumer Fraud Act does not apply to

commercial transactions. The cases have repeatedly held that the CFA governs the distribution

of merchandise for use in business operations and have stressed that a business entity or a

corporation can be a consumer within the meaning of the Act. "Sale" under the Act

encompasses leases. N.J.S.A. section 56:8-1(e). Further, the Act is not limited to the sale and

advertising of merchandise for personal, family, or household use.

In Hundred East Credit Corporation v. Eric Schuster Corporation, 212 N.J. Super. 350

(App. Div. 1986), the Appellate Division affirmed the trial court's order finding that plaintiff

buyer, a corporation, was entitled to recover from the defendant seller under the Consumer Fraud

Act for claims based on the purchase of peripherals to expand the capacity of plaintiff's

---

[3] As the Cox court stated: "to violate the Act, a person must commit an unlawful practice as defined in the legislation. Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." (Id. at 462)

computer system. The court emphatically rejected the argument posited by the defendant that:

> The Act was not meant to apply to the sale of merchandise for use in business operations but rather was intended for the protection of the consumer in the context of the personal, family, or household use of goods and services. Id. at p.354.

    The court stated without equivocation:

> **We find the contention unpersuasive. . . . Nothing in [the] statutory language suggests that the Act is inapplicable to the sale of merchandise for use in business operations. To the contrary, the language on its face makes the Act applicable to all sales of merchandise without regard to its intended use or the nature of the buyer. And a corporation or other business entity is a person entitled to sue under the act. [Defendant], nevertheless, argues that the Act is intended to protect 'consumers' which, it argues, does not include business entities. . . . Surely a business entity can be, and frequently is, a consumer in the ordinary meaning of that term. . . . There is . . . no justification to limit the Act, as urged by [defendants] to sales and advertising of merchandise for 'personal, family, or household use.' Such a reading would fly in the face of the statutory definitions of 'merchandise' and 'person' entitled to sue. . . . Unlawful practices thus can victimize business entities as well as individual consumers. Id. at 354-357.**

See also Maracio v. Campanella, 298 N.J. Super. 491, 498 (App. Div. 1997) ("In enacting the Act, the legislature intended a broad and liberal reading of the statute and regulations to provide strict rules protecting consumers. . . . The fact that Campanella's corporation owned the subject property for investment purposes is not determinative. **The Act protects corporate as well as private consumers."**).

See also Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J. Super. 171 (App. Div. 1994) (Plaintiff-developer bought used drywall suggested by defendant supplier. Plaintiff filed suit against defendant under the Consumer Fraud Act claiming defendant falsely represented that the drywall was inexpensive and easy to install. Superior Court dismissed the CFA claim, finding that the Act did not apply to businesses and commercial transactions. The Appellate Division unanimously reversed. "Nothing in the statutory language suggests that the Act is

20

inapplicable to the sale of merchandise for use in business operations. . . .   Therefore, we

conclude that the trial court erred in granting Dryvit summary judgment dismissing plaintiff's

claim under the Consumer Fraud Act."); The Drier Company v. Unitronix Corporation, 218 N.J.

Super. 260 (App. Div. 1986) (Plaintiff-business bought a computer and thereafter sued under the

CFA when the computer became defective.  In sustaining the CFA count, the Appellate Division

stated – *"Defendants also argue that plaintiff was a merchant rather than a 'consumer' and,*

*therefore, has no cause of action under the Consumer Fraud Act. We disagree. . . .   We are*

*satisfied that corporations were intended to qualify as 'consumers' under the Act."*  Id. 272).

See also Kavky v. Herbalife International of America, 359 N.J. Super. 497, 501 (App.

Div. 2003) (The CFA governed a business dispute over sale of a franchise, even though a

franchise is not "merchandise" in the conventional sense.  The court stressed that "the Act is

remedial, and, therefore, its provisions are to be construed liberally in favor of the consumer.

Moreover, the history of the Consumer Fraud Act is one of constant expansion of consumer

protection." Id. at p.504.  In finding that a franchise qualified as merchandise, the court held that

the act "is concerned not so much with the specific nature of the property but rather with whether

the property is generally made available to the public." Id. at 506.).

\*       \*

Under this persuasive authority, the court should reject Amalgamated's contention that

the CFA does not apply to this commercial transaction.  As the appellate division stated in New

Mea Construction Corp. v. Harper, 203 N.J. Super. 486, 500 (App. Div. 1985):

> We deem it our responsibility to construe the Act broadly not in a crabbed fashion
> which will provide an exemption for custom builders, an exception we do not think
> the legislature ever intended to bestow. **Statutory exceptions are not to be implied.**
> (citing Skeer v. EMK Motors, Inc., 187 N.J. Super. 465.

21

(a) **Under New Jersey Supreme Court and Appellate Division Precedent, Amalgamated's Collection Of An Excessive Collection Fee Violates Public Policy and Is An Unjust And "Unconscionable" Commercial Practice Actionable Under The Consumer Fraud Act.**

In <u>Wasserman's Inc. v. Township of Middletown</u>, 137 N.J. 238 (1994), the New Jersey Supreme Court quoted with approval the rule articulated by the Second Restatement of Contracts, section 356(1), which outlaws the contractual provision of a penalty:

> Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of **public policy** as a **penalty.** (Emphasis added)

<u>Wasserman's</u> further noted that – "**we are sensitive to the possibility that, as their history discloses, such clauses may be unconscionable and unjust.**" <u>Id</u>. p. 253-254.

<u>Wasserman's</u> saw the New Jersey Supreme Court remand for trial court fact-finding as to whether a lease default clause was enforceable liquidated damages or an illegal penalty. The term in question stipulated that the landlord would pay 25 percent of the lessee's average gross receipts for one year in the event the landlord cancelled the lease.

The Supreme Court pointed out that "for more than five centuries" courts have scrutinized contractual terms that specify damages in the event of breach." <u>Id</u>. at p. 248. "As the law has evolved, a stipulated damage clause must constitute a reasonable forecast of the probable injury resulting from a breach; otherwise, the clause will be unenforceable as a penalty, and the non-breaching party will be limited to conventional damage measures." <u>Id</u>. at p. 249.

<u>Wasserman's</u> then made two critical pronouncements which are of dispositive importance to this motion. *First, the Court stressed that if there is any doubt, a contractual provision should*

22

*be construed as an outlawed penalty and not allowable liquidated damages.* Id. at p. 451.[4]

Second, while "the decision whether a liquidated damages clause is enforceable is a question of

law for the court. . . *it may require resolution of underling factual issues."* (citing Highgate

Association Ltd. V. Merryfield, 157 Vt. 313, 597 A.2d 1280, 1282 (Vt. 1991) ("While

enforceability of liquidated damages provisions is a question of law, the trial court must make a

tripartite inquiry which requires the resolution of questions of fact.").[5]

 Wasserman's was followed by the MetLife decision. 159 N.J. 484 (1999). MetLife

upheld the trial court's finding that a 5% late fee contained in a multi-million dollar commercial

mortgage loan agreement was reasonable liquidated damages and not an unlawful penalty.

 MetLife articulated the following test on the enforceability of a late fee:

> *The overall single test of validity is whether the stipulated damage clause is reasonable
> under the totality of the circumstances.* Id. at 496.

Among the factors entering into the reasonableness inquiry are:

(1) *Industry Standards* – how does the challenged late charge compare to late fees
 employed in the same business?: and
(2) A factual analysis of the defendant's operational costs resulting from untimely
 payments. This analysis will require presentation of evidence and a hearing.

 MetLife was careful to distinguish between a relatively low, enforceable late fee, like the

5% charge allowed there, and "unusually large percentages or explicit evidence of a coercive

---

[4] Citing The Monmouth Park Association v. The Wallis Ironworks, 53 N.J.L. 132, 1892 N.J.
LEXIS 5, p.*15 (Court of Appeal and Errors 1892) ("And if it be doubtful on the whole
agreement whether the sum is intended as a penalty or as liquidated damages, it will be construed
as a penalty because the law favors mere indemnity."); Westmount Country Club v. Kameny, 82
N.J. Super. 200, 206 (App. Div. N.J. 1964)

[5] Van Es v. Honeyleaf Properties, Inc., 253 N.J. Super. 566, 568-569 (App. Div. N.J. 1992)
(Appellate Division overturned Superior Court's grant of summary judgment on the issue
whether 15 percent liquidated damages amount represented a forecast of damages in the event of
breach. *The court held that it was improper to grant summary judgment prior to the
completion of discovery.*)

intent." Id. p. 499. **MetLife cited Garcia v. Canan, 851 F. Supp. 327, 328 (N.D. Ill. 1994), which dealt with a 10% late fee, as representing an "unusually high" charge and therefore qualifying as an unenforceable penalty.**

If a 10% late fee is "unusually large", MetLife, supra, p. 499, then what are we to make of the nearly 40% collection fee Amalgamated has extracted from plaintiff Kings Choice and the class? Plaintiff's Third Count states a valid CFA claim based on Amalgamated's collection of an oppressive 40% (or analogous) collection fee. Under Wasserman's and MetLife, a contractual penalty violates New Jersey's public policy and is "unjust" and "unconscionable." That is precisely the kind of commercially rapacious conduct the CFA aims to redress.

## POINT III

### THE COMPLAINT'S FIFTH CLAIM PLEADS A GOOD CAUSE OF ACTION FOR UNJUST ENRICHMENT BECAUSE A PARTY MAY RECOVER AS RESTITUTIONARY DAMAGES THAT PART OF THE LATE FEE WHICH IS EXCESSIVE AND EXCEEDS REASONABLE DAMAGES.

Defendant Amalgamated cannot seriously suggest that the common law permits the imposition of a contractual penalty. MetLife and Wasserman's are just two of a long string of New Jersey and out-of-state cases banning contractual penalties and allowing for recovery where such payments exceed reasonable compensation. **Every** United States jurisdiction and indeed, other common law judicial systems, such as Ireland, England, New Zealand, Scotland, and Canada coalesce and refuse to enforce damage terms so high as to be considered a penalty.[*][*]

---

[*][*] Taylor v. Sandiford, 20 U.S. 13, 15 (1822, Marshall, J.); Garrett v. Coast and Southern Federal Savings and Loan Association, 9 Cal. 3d. 731 (Supr. Court Cal. 1973); Beasley v. Wells Fargo Bank, N.A., 1 Cal. Rptr. 2d 446 (Court App. Cal. 1991); Brenner v. Little Red Schoolhouse, Ltd., 302 N.C. 207, 214 (1981); The Whelling Clinic v. Van Pelt, 192 W. Va. 620, 624, N.12 (994); Highgate Association v. Merryfield, 157 Vt. 313, 316 (1991); Gary Outdoor Advertising Co. v. Sun Lodge Inc., 133 Az. 240, 243 (1982); Benya v. Gamble, 321 S.E. 2d 57 (Court App. S.C. 1984); Norman v. Durham, 380 S.W. 2d 296, 304 (Sup. Court. N.C. 1964).

Authority is clear that a party who pays a penalty may recover as restitutionary damages

that segment of his payment which is unreasonably high, **under a theory of unjust enrichment**.

In Kutzin v. Pirnie, 124 N.J. 500, 512 (1991), the New Jersey Supreme Court held:

> That if a plaintiff can and does show by proper evidence that the defendant is holding an
> amount of money as a penalty rather than as compensation for injury, he should be given
> judgment for restitution of that amount.

Relying on Kutzin v. Pirnie, New Jersey's courts have consistently held that where a

party pays a penalty which exceeds reasonable damages, that party may sue to recover the excess

---

See further, Frank v. Jansen, 303 Minn. 86, 90-91, (1975); Man O War Restaurants, Inc. v. John Martin, 932 S.W.
2d 366, 369 (Sup. Court Ky. 1996); Koenig v. Schlitz Breweries, 126 Wis. 349, 368 (Sup. Court Wis. 1985);
Shallow Brook Associates v. Dube, 135 N.H. 40 48-48 (Sup. Court N.H. 1991); Pacheo v. Scoblinko, 532 A. 2d
1036, 1038, 1039 (Sup. Jud. Court Me. 1987); Council v. Hogan, 566 A. 2d 1070, 1072 (D.C. Court of App. 1989);
Colby v. Bailey, 5 Haw. 152, 153 (1884); Kona v. Pac Group, 680 F. Supp. 1438 (D.Haw. 1988); Kalenka v. Taylor,
896 P. 2d 222, 229 (Sup. Court Alaska 1995); United States School District 315 v. DeWerff, 6 Kan. App. 2d 77, 81,
(Court of App. Kan. 1981); Rohauer v. Little, 736 P. 2d 403, 410 (Sup. Court Col. 1987).

See further: Zito v. Goaude, 122 R.I. 886 (Sup. Court R.I. 1979); Atlantic Aviation v. Provident Life and Accident
Insurance Co. 1989 Dist. LEXIS 10261 (D. Del. 1989); Worley v. McCarty, 354 Mich. 599 (1958); Camelot Music,
Inc. v. Mars Realty and Improve. Co., 514 So. 2d 987 (Sup. Court Alabama 1987); Lane v. Pfeifer, 568 S.W. 2d 212
(Sup. Court Ark. 1978); 301 Dahlgren Ltd. v. Board of Supervisors, 240 Va. 200, 201 (Sup. Court. Va. 1990);

See further AFLAC, Inc. v. Williams, 265 Ga. 351, 354, (1994); Gershin v. Sherman, 685 N.E. 2d 1125, 1997 Ind.
App. LEXIS 1423 pp*10 (Court App. Ind. 1997); Harmon v. Eggers, 699 S.W. 2d 159 163 (Tenn. 1985); Lombardo
v. Deshote, 647 So. 2d 1086, 1081 (Sup. Court La.) (Applying Civil Code).

See further Walter Implement, Inc., v. Focht, 107 Wash. 553 (Sup. Court Wash. 1987); Woodhaven Apartments v.
Washington, 942 P. 2d 918 (Sup. Court Utah 1997); Phillips v. Phillips, 820 S.W. 2d 785 (Sup. Court Tx. 1991);
Lake Ridge Academy v. Carney, 613 N.E. 2d 183, 188 (Sup. Court Ohio 1993); Illingwroth v. Bushong, 297 Or.
675 (1984); Fischer v. Schmeling, 520 N.W. 2d 820, 822 (Sup. Court N.D. 1994); Wandler v. Lewis, 1997 S.D.
LEXIS 98 p*21 (Sup. Court S.D. 7/23/97); Story v. City of Bozeman, 259 Mont. 207, 227 (1993); Kushan v. Strong,
39 N.M. 281 (1935); Graves v. Cupic, 75 Idaho 451 (1954); Massey v. Love, 478 P. 2d 948 (Sup. Court Ok. 1979);
Rohlin Construction Co. v. Hintoy, 476 S.W. 2d 78 (Sup. Court Iowa 1991); Loomis v. Lange Fin. Corp., 109 Nev.
1121 (1993); Maxey v. Glindmeyer, 379 So. 2d 297, 301 (Sup. Court. Miss. 1980); Abel Construction Co. v.
Seward, 188 Neb. 166 (1972); Weber v. Broady, 255 Mo. 195, 200 (1992); Jessen v. Jessen, 871 P. 2d 987 (Sup.
Court Wyo. 1991).

See the following foreign, common law jurisdictions demarcating between a permissible liquidated damages clause
and a disproportionately high and unenforceable penalty: 370-341 Ontario Ltd. v. Mikhalin, 1996 O.T.C. LEXIS
3913, p*14 (Ontario Court of Justice, 1996); Hart Ltd. v. Mitchell, 1996 S.C.L.P.R. 68 (Sheriff Court, Glasgow,
Scotland October 30, 1995); Lordsvale v. Bank of Zambia, 30 E.R. 165 (Queens' Bench 1996); , 30 E.R. 165
(Queens' Bench 1996); Schiesser International v. Gallagher, 106 I.L.T.R. 22 (Ireland 1971); General Finance
Acceptance Ltd. v. Melrose, 1 N.Z.L.P.R. 465 (High Court Auckland, 1987).

as restitution for unjust enrichment. <u>Nohe v. Roblyn Development Corp.</u>, 296 N.J. Super. 172,

175 (App. Div. 1997); <u>Van Es v. Honeyleaf Properties, Inc.</u>, 253 N.J. Super. 566, 568 (App. Div.

1992) (a party is entitled to restitution of payments made under a liquidated damages clause, if

such payment is unreasonable in light of the anticipated or actual loss caused by the party's

breach.)

**"Almost any kind of case in which the defendant gains from the plaintiff and in**

**which it would be unjust...to permit the defendant to retain the gain is a good candidate**

**for restitutionary recovery."** Dobbs, <u>Law of Remedies</u>, § 4.1, p.553 (West. Pub. Co. 1993).

**Restitution is available for breach of contract and intentional fraud.** <u>See</u> Dobbs, <u>supra</u>, at p.

160 and also p. 559 ("Restitution is an alternative remedy for an ordinary breach of contract.");

<u>See also id</u>. at p. 553, 579 ("One whose money is taken by fraud...is entitled to restitution).

All elements for a restitutionary recovery are present here. Amalgamated profited by its

own wrong at the expense of plaintiff Kings Choice. In violation of New Jersey law and public

policy it assessed FedEx customers impermissible collection fee penalties. Plaintiff's allegations

amply support an unjust enrichment claim.[6]

## POINT IV

## AMALGAMATED'S MOTION TO DISMISS THE CLASS
## ALLEGATIONS SHOULD BE DENIED.

Amalgamated asserts that because Plaintiff-Kings Choice's individual claims are

purportedly infirm and must be dismissed, Kings Choice has no standing to represent a class.

---

[6] The cases Amalgamated cites against an unjust enrichment recovery are unconvincing. Those
decisions dealt with a written contract where one party sued under a theory of unjust enrichment
to win greater benefits than provided by the contract. But this precedent does not remotely
convey that where, as here, a written contract exists and one party extracts extra-contractual
penalties which are against public policy, the deprived party is disabled from receiving
restitution by means of an unjust enrichment claim.

(Amalgamated Brief, Point V, p. 19-21.)  However, as Plaintiff has amply demonstrated above, Amalgamated's challenge to Plaintiff's individual counts is unpersuasive.  Consequently, it is premature for this Court to make any decision on whether the class claims are viable.

Under Federal Rule 23(c)(1)(A), the court "must – **at an early practicable time** – determine … whether to certify the action as a class action."  The quoted provision – amended in 2003 - changed the original wording of the rule that a class determination must be made, "as soon as practicable."  The purpose of the change was to allow the parties more time to develop a factual record in support of and in opposition to class certification.

Consonant with Rule 23(c)(1)(A), this Court should not adjudicate any aspect of class certification or the merits of Plaintiff's class claims until Plaintiff has developed a complete factual record and moves for class certification.

**CONCLUSION**

Amalgamated's Motion to Dismiss should be denied in all respects.

_____

Steven L. Wittels (SLW-8110)
Jeremy Heisler (JH -0145)
SANFORD WITTELS & HEISLER, LLP
440 West Street
Fort Lee, New Jersey 07024
(201) 585-5288

David W. Sanford
SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Ave., N.W., Suite 300
Washington, D.C. 20009
(202) 742-7777


Attorneys for Plaintiff and the class

Dated:  October 31, 2007

27
