NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KING'S CHOICE NECKWEAR, INC., | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 07-CV-0275 (DMC) |
| FEDEX CORPORATION, FEDEX CUSTOMER INFORMATION SERVICES, INC., FEDEX CORPORATE SERVICES, INC., AMALGAMATED FINANCIAL GROUP, and LAW OFFICES OF WEINSTOCK & O'MALLEY, | : | |
| Defendants. | : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) by Defendants Amalgamated Financial Group ("AFG") and the Law Offices of Weinstock & O'Malley, P.A. ("Weinstock," and collectively "Defendants"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion to dismiss is **denied**.

**I.    BACKGROUND**[1]

    A.    The Parties

At all times relevant to this action, Plaintiff Kings Choice Neckwear, Inc. ("Plaintiff") was and is a small neckwear manufacturing company incorporated and headquartered in New York City.

---

[1]The facts set forth in this Opinion are taken from the Parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

(First Amended Complaint ¶ 10.) Plaintiff is a regular customer of FedEx. Plaintiff utilizes FedEx's shipping services to both send and receive packages from clients. Plaintiff is billed for these services directly from FedEx and then remits payment. (First Amended Complaint ¶ 21.)

Defendant FedEx Corporation ("FedEx") is an international corporation incorporated in Delaware and headquartered in Memphis, Tennessee. (First Amended Complaint ¶ 11.) FedEx does business in more than 220 countries and territories around the world. FedEx is licensed to do business in New Jersey and transacts business in this state. (First Amended Complaint ¶ 11.) FedEx delivers more than six million express, ground, freight and expedited shipments daily and earned $32.2 billion in revenue in 2006. (First Amended Complaint ¶ 11.) Defendant FedEx Customer Information Services, Inc. ("FedEx CIS") is a wholly owned subsidiary of Defendant FedEx Corporate Services, Inc. ("FedEx Corp.") (First Amended Complaint ¶ 11.) According to FedEx's website, FedEx CIS "was established in 2006 to align customer contact centers, worldwide revenue operations, claims, trace and package engineering, as a subsidiary of FedEx Corp., the corporation's professional services company." (First Amended Complaint ¶ 11.) Defendant FedEx CIS is incorporated in Delaware and headquartered in Memphis, Tennessee. FedEx CIS has more than 4,700 employees. (First Amended Complaint ¶ 11.) Upon information and belief, Defendant FedEx CIS is the enforcement arm of FedEx and FedEx CIS; the parent companies utilize FedEx CIS to collect unpaid customer accounts. FedEx CIS is licensed to do business in New Jersey and transacts business in this state. (First Amended Complaint ¶ 13.) FedEx is incorporated in Delaware and headquartered in Memphis, Tennessee. FedEx Services has more than 15,000 employees. FedEx is licensed to do business in New Jersey and transacts business in this state. (First Amended Complaint ¶ 14.) According to FedEx's website, FedEx Corp. "began operations in June 2000 to provide

information technology, sales and marketing support for FedEx Corp. subsidiaries FedEx Express and FedEx Ground. Today FedEx Services coordinates sales, marketing, information technology, customer service, and worldwide supply chain services support for the global FedEx brand." (First Amended Complaint ¶ 15.)  All of the FedEx entities sued in this action operate as a single, integrated unit to carry-out FedEx's shipping operations. (First Amended Complaint ¶ 16.)

AFG is headquartered in Old Bridge, New Jersey and transacts business in New Jersey. AFG is incorporated in New Jersey. (First Amended Complaint ¶ 17.)  According to its website, AFG is "the Nation's leading Bill to Bank management firm. AFG provides end-to-end services in Credit Risk, Billing, Customer Care, Dispute Resolution, Receivable Contact, Collections and Cash Application." (First Amended Complaint ¶ 18.)

Weinstock is an "in-house" law firm owned by AFG, which supplies legal collection services to AFG and its client creditor companies. (First Amended Complaint ¶ 19.) According to AFG's website, "[AFG] was the first (still only one of a few) firms in the nation to offer our clients the use of our in-house attorney and his staff of trained, para-legal collectors." (First Amended Complaint ¶ 19.) Weinstock is headquartered in the same Old Bridge, New Jersey offices as its owner, AFG, and transacts business in New Jersey from that office. (First Amended Complaint ¶ 19.)

B.      FedEx's Collection Fee Provision

Fed Ex's U.S. Terms and Conditions contains a provision that defines the amount of "collection agency fees" that FedEx may charge customers: "[A]ll reasonable costs incurred by FedEx in obtaining or attempting to obtain payment for services rendered by us. Such costs, include, but are not limited to, attorney's fees, collection agency fees, interest, and court costs. (Complaint ¶ 27.)

On or about June 19, 2006, Plaintiff received correspondence from AFG, claiming that Plaintiff owed FedEx $140.00 for a previously shipped delivery to Plaintiff. (First Amended Complaint ¶ 22.) The $140.00 payment comprised $100.00 as an overdue amount on an allegedly unpaid shipment and $40.00 as a Collection Fee. (First Amended Complaint ¶ 25.) During August and September 2006, Weinstock, a law firm, sent letters to Plaintiff threatening that if Plaintiff did not pay the $140.00, Defendants would proceed with litigation to secure the allegedly delinquent payment. The letters referenced the caption: "FEDEX CUSTOMER INFO SVCS vs. KINGS' CHOICE NECKWEAR INC [sic]." (First Amended Complaint ¶ 24.) Therefore, due to the threat of litigation, the potential impairment of its credit and the need to continue with uninterrupted FedEx services, Plaintiff paid the $140.00 on September 8, 2006 "under protest." (First Amended Complaint ¶ 26.)

        C.      <u>Plaintiff's Claims</u>

Predicated on the foregoing facts, Plaintiff pleaded class action allegations on behalf of all FedEx customers upon whom Defendants assessed an allegedly high and contractually banned collection fee penalty. (First Amended Complaint ¶ 31-34.)

The Complaint's Second Claim charges AFG with aiding and abetting FedEx's breach of contract by helping to recover an allegedly exorbitant collection fee penalty expressly proscribed by FedEx's terms and conditions. (First Amended Complaint ¶ 41-44.) The Complaint's Third Claim asserted a New Jersey Consumer Fraud Act ("CFA") claim against AFG. The Fourth Claim alleged that Defendants engaged in an unlawful scheme to collect excessive and unreasonable collection fee penalties in violation of public policy. The Complaint's Fifth Claim alleges unjust enrichment. The

4

unjust enrichment claim alleges that Defendants received money belonging to Plaintiff and the class predicated on the foregoing facts and in justice and good conscience, Defendants should not be permitted to retains this money. (First Amended Complaint ¶ 59-62.)

   D. <u>Procedural History and Discovery</u>

On August 30, 2007, AFG moved for summary judgment. Following a conference before Magistrate Judge Falk, AFG withdrew the motion and instead submitted the instant motion to dismiss. The two motions are very similar and, in fact, AFG's brief in support of dismissal contains portions of the FED. R. CIV. P. 56.1 statement lifted from the Summary Judgment Motion.

While FedEx and AFG have provided limited document discovery, depositions have not yet been taken. The depositions of designated employees of FedEx, AFG and Weinstock were scheduled to commence this past November.

**II.** **STANDARD OF REVIEW**

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.</u>, 140 F.3d 478, 483 (3d Cir. 1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. See <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). In <u>Bell Atl. Corp. v. Twombly</u>, the Supreme Court clarified the FED. R. CIV. P. 12(b)(6) standard. See 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in <u>Conley v. Gibson</u>, 355 U.S. 41

(1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Bell Atl. Corp., 127 S.Ct. at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp., 127 S.Ct. at 1965.

**III.    DISCUSSION**

    A.    The Complaint States a Valid Claim that AFG Aided and Abetted or Conspired with FedEx to Impose a Contractually Impermissible Collection Fee Penalty on FedEx's Shipping Customers

AFG has a heavy burden in moving for a dismissal pursuant to FED. R. CIV. P. 12(b)(6). When adjudicating a FED. R. CIV. P. 12(b)(6) Motion to Dismiss, the Court must view the allegations of the Complaint in a light most favorable to the plaintiff. The Court may dismiss for failure to state a claim only if it is certain that no relief could be granted under any factual scenario consistent with the pleading's allegations. The overriding question before the Court is not whether the plaintiff will prevail, but whether the plaintiff can offer facts that give rise to an entitlement of relief. See Padilla v. Price Toyota, 2006 U.S. Dist. LEXIS 45506 (D. N.J. 2006).

New Jersey recognizes civil conspiracy and aiding and abetting as valid causes of action. The Supreme Court of New Jersey has defined a civil conspiracy as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Sisso v. Islamic Republic of Iran, 2007 U.S. Dist. LEXIS 48526 at *51-*54 (D. D.C. July 5, 2007); Banco Popular N. Am. v. Gandi, 184

N.J. 161, 177 (N.J. 2005). A civil conspiracy claim requires an underlying cause of action apart from the conspiracy itself. See Bd. of Ed. v. Hoek, 38 N.J. 213, 238 (1962); Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364-65 (App. Div. 1993). "To establish a conspiracy, it simply must be shown that there was 'a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." Morgan, 268 N.J. Super. at 365 (citing Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971)).

Aiding and abetting occurs where one party is aware of another party's breach of duty and helps or encourages that breach. See State, Dep't. of Treasury, Div. of Inv. *ex rel*. McCormac v. Quest Commc'ns. Intern. Inc., 387 N.J. Super. 469, 481 (App. Div. 2006) ("McCormac"). The plaintiff must show wrong-doing independent of aiding and abetting, knowledge of the injury on the part of the aider or abettor and significant aid from the aider or abettor. See id. In New Jersey, shared intent is not required for civil aiding and abetting. See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 415 n.3 (3d Cir. 2003). Here, Plaintiff alleges that AFG conspired with or aided and abetted FedEx to breach the latter's contracts with Plaintiff and the Class by charging exorbitant collection fee penalties, thereby enriching both AFG and FedEx.

The intra-corporate conspiracy exception is inapplicable and does not defeat the Complaint's Second Claim. A party cannot conspire with itself. Because it is only possible that a corporation act through its employees, the corporation cannot enter into a conspiracy with its own employees. See Applied Equip. Corp. v. Litton Saudi Arabia, 7 Cal. 4th 503, 512 n.4 (Cal. 1994); Black v. Bank of Am., 30 Cal. App. 4th 1, 6 (Cal. Ct. App. 1994). In its brief in support of the motion to dismiss, AFG attempts to analogize itself with a FedEx employee and for this reason, asserts that it cannot conspire

with FedEx to breach FedEx's terms against an unreasonably high collection fee. AFG, however, is not FedEx's employee and, therefore, its actions do not represent FedEx's actions. This matter does not involve an "intra-corporate" conspiracy between a corporation and its employees, but rather an "inter-corporate" conspiracy between two distinct corporate entities, namely FedEx and AFG. In Knorr Brake Corp. v. Harbil, Inc., the court summarized the distinction as "a civil conspiracy cannot exist among a corporation and its employees. A civil conspiracy can exist among corporations." 738 F.2d 223, 230 (7th Cir. 1984) (internal citations omitted) ("Knorr"). The holding in Knorr is compelled by the very nomenclature of the "intra-corporate" conspiracy defense. "Intra" as a prefix, denotes "within." Coleman, 80 N.J. 15, 20-21 (1910).

The intra-corporate conspiracy rule does not apply when agents who act in their own self-interest instead of solely on behalf of the corporation. See Black, 30 Cal. App. 4th at 6 n.3. AFG acted for its own individual advantage in collecting the fee because the company profited. See Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1436 (3d Cir. 1994).

AFG may be independently liable because there are issues of fact regarding whether it is a non-agent independent contractor. Even under AFG's position, intra-corporate immunity protects only agents of a corporate principal. Here, there are unresolved issues regarding whether AFG is FedEx's agent. AFG is an independent contractor of FedEx, not a servant and, therefore, can be held separately liable. An independent contractor is an entity that is contacted to do work and retains control over the means by which the work is performed. See, e.g., AT&T v. Winback & Conserve Program, 42 F.3d 1421, 1435 (3d Cir. 1994); Muhammad v. N.J. Transit, 176 N.J. 185, 195-98 (2003); Bahrle v. Exxon Corp., 145 N.J. 144, 157 (1996); Baldasarre v. Butler, 625 A.2d 458, 465

8

(N.J. 1993). A principal's lack of control over the agency makes an agent independently liable for its actions. See AT&T, 42 F.3d at 1436.

Thus, the key difference between a servant and an independent contractor is the degree of control the principal exerts over the agent. Factors used to determine whether the control is minimal enough to constitute an independent contractor relationship include, *inter alia*, whether the agent worked for other companies at the same time, whether the agent is paid by time worked or by the work performed, whether the agent operates its own independent enterprise, whether the principal has a right of physical control, whether the principal supplied the tools and work location and whether the work is part of the principal's regular course of business. See id. at 1436-37; Mavrikidis v. Petullo, 153 N.J. 117, 132 (1998); United States v. President & Fellows of Harvard College, *et al.*, 323 F. Supp. 2d 151, 169 (D. Mass. 2004). The right to demand certain results alone is insufficient to constitute a master-servant agency relationship. See AT&T, 42 F.3d at 1435. A limited amount of control over the agency by the principal does not create the master-servant relationship; a principal cannot "transform an independent contractor into a servant merely because he wishes to supervise the project as it transpires." Id. at 1436 (quoting Brady v. Ralph Parsons Co., 308 Md. 486 (1987)).

Furthermore, an independent contractor is not necessarily an agent. See AT&T, 42 F.3d at 1436. A non-agent independent contractor is defined as "[a] person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other." Id. at 1439. The distinction between a non-agent independent contractor and an agent independent contractor has been analogized as "a firm that contracts to perform a particular, discrete

task, such as to build a swimming pool, or to a party who is empowered to speak for another and bind the other in contracts." Id.

In the current case, AFG is not FedEx's servant. Conversely, AFG is an independent entity that works for different clients, including FedEx. FedEx pays AFG only for the work performed. AFG's work does not comprise the regular course of business for FedEx; collection services are convenient but, unnecessary to provide shipping services. FedEx exercises minimal control over AFG and that control relates directly to the results sought, rather than the means employed to achieve those results. Therefore, AFG is not FedEx's servant and, consequently, is liable for its own actions.

      B.      Plaintiff's New Jersey Fraud Act Claim

AFG argues that Plaintiffs' Third Count should be dismissed because the transaction between Plaintiff and FedEx involved wholesale goods and the CFA is inapplicable. Defendants' emphasis on the nature of the shipped goods, however, is misplaced. The transaction was not a purchase of wholesale goods for resale. The transaction giving rise to the CFA claim is the service transaction between Plaintiff and FedEx. The nature of the goods shipped is irrelevant because the service that FedEx provided led to the CFA claim. The CFA provides, in pertinent part, that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise is declared to be an unlawful practice.

N.J.S.A. 56:8-1. In Lemelledo v. Beneficial Mgmt. Corp. of Am., the Supreme Court of New Jersey

explained:

> The CFA is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate . . . . The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose mainly, to root out consumer fraud . . . . Accordingly, our courts have invoked the Act to cover a wide variety of practices.

150 N.J. 255, 263-64 (1997); Constr. Corp. v. Harper, 203 N.J. Super. 486, 500 (App. Div. 1985).

In Cox v. Sears, Roebuck and Co., the Supreme Court of New Jersey defined the CFA's parameters and highlighted that conduct showing lack of good faith, honesty in fact and observance of fair dealing may violate the CFA. See 647 A.2d 454 (N.J. 1994). The CFA specifically refers to any "unconscionable commercial practice." In Cox, the Supreme Court held that "the standard of conduct of the term 'unconscionable' implies is lack of good faith, honesty in fact, and observance of fair dealing," whereby "unconscionability" is "designed to establish a broad business ethic." Kugler v. Romain, 58 N.J. 522, 543 (1971).

The CFA applies to commercial transactions and governs the distribution of merchandise for use in business operations. A business entity or a corporation can be a consumer within the meaning of the CFA. "Sale," under the Act, encompasses leases. See N.J.S.A. § 56:8-1(e). Further, the CFA is not limited to the sale and advertising of merchandise for personal, family or household use. For example, in Hundred East Credit Corp. v. Eric Schuster Corp., the Court affirmed the trial court's order finding that plaintiff buyer, a corporation, was entitled to recover from the defendant seller under the CFA for claims based on the purchase of peripherals to expand the capacity of plaintiff's computer system. See 212 N.J. Super. 350 (App. Div. 1986). The court rejected the defendant's argument that the CFA "was not meant to apply to the sale of merchandise for use in business

11

operations but rather was intended for the protection of the consumer in the context of the personal, family or household use of goods and services." Id. at 354. The Court held that "[n]othing in that statutory language suggests that the Act is inapplicable to the sale of merchandise for use in business operations. To the contrary, the language on its face makes the Act applicable to all sales of "merchandise" without regard to its intended use or the nature of the buyer." Id. at 355; see also Kavky v. Herbalife Int'l of Am., 359 N.J. Super. 497, 501 (App. Div. 2003); Maracio v. Campanella, 298 N.J. Super. 491, 498 (App. Div. 1997); Coastal Group, Inc. v. Dryvit Sys., Inc., 274 N.J. Super. 171 (App. Div. 1994); The Drier co. v. Unitronix Corp., 218 N.J. Super. 260 (App. Div. 1986). Therefore, the CFA applies to this commercial transaction.

    1.    <u>AFG's Collection of an Excessive Fee Violates Public Policy and is an Unjust and Unconscionable Commercial Practice Actionable under the CFA</u>

In Wasserman's Inc. v. Twp. of Middletown, the Supreme Court of New Jersey quoted with approval the rule articulated by the Second Restatement of Contracts § 356(1), which precludes the commercial provision of a penalty:

> Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

137 N.J. 238 (1994). Wasserman's further noted that "we are sensitive to the possibility that, as their history discloses, such clauses may be unconscionable and unjust." Id. 253-54. Wasserman's saw the Supreme Court of New Jersey remand for trial court fact-finding as to whether a lease default clause was enforceable liquidated damages or an illegal penalty. The term in question stipulated that the landlord would pay twenty-five percent of the lessee's average gross receipts for one year in the

event that the landlord cancelled the lease. The Court indicated that "[f]or more than five centuries, courts have scrutinized contractual provisions that specify damages payable in the event of breach." Id. at 248 (citing Wassenaar v. Panos, 111 Wis. 2d 518 (1983)). "As the law has evolved, a stipulated damage clause must constitute a reasonable forecast of the probable injury resulting from a breach; otherwise, the clause will be unenforceable as a penalty, and the non-breaching party will be limited to conventional damage measures." Wasserman's, 137 N.J. at 249. Wasserman's made two critical pronouncements. First, the Court stressed that if there is any doubt, a contractual provision should be construed as an outlawed penalty and not allowable liquidated damages. See id. at 451. Second, while "the decision whether a liquidated damages clause is enforceable is a question of law for the court . . . it may require resolution of underlying factual issues." Id. at 451 (citing Highgate Ass'n Ltd. v. Merryfield, 597 A.2d 1280, 1282 (Vt. 1991).

Wasserman's was followed by the Metlife decision. See 159 N.J. 484 (1999). Metlife upheld the trial court's finding that a five-percent late fee contained in a multi-million dollar commercial mortgage loan agreement was reasonable liquidated damages and not an unlawful penalty. Metlife articulated a test for the enforceability of a late fee: "The overall single test for validity is whether the stipulated damage clause is reasonable under the totality of the circumstances." Id. at 496. The test considered reasonableness factors, such as industry standards and a factual analysis of the defendant's operational costs resulting from untimely payments. Metlife was careful to distinguish between a relatively low, enforceable late fee, like the five-percent charge allowed there, and "unusually large percentages or explicit evidence of a coercive intent." Id. at 499. Metlife cited Garcia v. Canan, which dealt with a ten-percent late fee as representing an "unusually high" charge

13

and, therefore, qualifying as an unenforceable penalty. See 851 F. Supp. 327, 328 (N.D. Ill. 1994). A ten-percent late fee is "unusually large." MetLife, 159 N.J. at 499. Thus, the nearly forty-percent collection fee that AFG received from Plaintiff is certainly exorbanant and, therefore, unenforceable.

### C.     Plaintiff's Recovery

The common law does not permit the imposition of a contractual penalty. MetLife and Wasserman's are just two cases in a string of authority banning contractual penalties and providing for recovery where such payments exceed reasonable compensation. See, e.g., Taylor v. Sandiford, 20 U.S. 13, 15 (1822); The Wheeling Clinic v. Van Pelt, 192 W. Va. 620, 624 n.12 (1994); Highgate Assoc. v. Merryfield, 157 Vt. 313, 316 (1991); Benya v. Gamble, 321 S.E.2d 57 (Ct. App. S.C. 1984); Gary Outdoor Adver. Co. v. Sun Lodge Inc., 133 Az. 240, 243 (1982); Brenner v. Little Red Schoolhouse, Ltd., 302 N.C. 207, 214 (1981); Garrett v. Coast and S. Fed. Savings and Loan Assoc., 9 Cal. 3d 731 (Sup. Ct. Cal. 1973); Norman v. Durham, 380 S.W.2d 296, 304 (Sup. Ct. N.C. 1964). Here, the elements for a restitutionary recovery are present. AFG may have profited by its own wrong at Plaintiff's expense. AFG may have assessed FedEx customers impermissible collection fee penalties in violation of New Jersey law and public policy. Therefore, Plaintiff's allegations at this stage amply support an unjust enrichment claim.

### D.     Motion to Dismiss the Class Allegations Should be Denied

AFG asserts that because Plaintiff's individual claims are purportedly infirm and must be denied, Plaintiff has no standing to represent a class. A party who pays a penalty may recover as restitutionary damages that segment of his or her payment which is unreasonably high under a theory of unjust enrichment. In Kutzin v. Pirnie, the Supreme Court of New Jersey held that "if a plaintiff

14

can and does show by proper evidence that the defendant is holding an amount of money as a penalty rather than as compensation for injury, he or she should be given judgment for restitution of that amount." 124 N.J. 500, 512 (1991). Where a party pays a penalty which exceeds reasonable damages, that party may sue to recover the excess. As Plaintiff has demonstrated, however, AFG's challenge to Plaintiff's individual counts is unpersuasive. Consequently, it is premature for this Court to decide whether the class claims are viable.

Under FED. R. CIV. P. 23(c)(1)(A), the court "must – at an early practicable time – determine . . . whether to certify the action as a class action." The quoted provision – amended in 2003 – changed the original wording of the rule that a class determination must be made, "as soon as practicable." The purpose of the change was to allow the parties more time to develop a factual record in support of and in opposition to class certification.

Consistent with FED. R. CIV. P. 23(c)(1)(A), this Court should not adjudicate any aspect of class certification on the merits of Plaintiff's class claims until such time that Plaintiff has developed a complete factual record and moves for class certification.

## IV.    CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' motion to dismiss is **denied**. An appropriate Order accompanies this Opinion.

 S/   Dennis M. Cavanaugh  
Dennis M. Cavanaugh, U.S.D.J.

Date:       December 20, 2007  
Orig.:      Clerk  
cc:         All Counsel of Record  
            Hon. Mark Falk, U.S.M.J.  
            File